FILED - USDC - FLMD - ORL
OCT 19 2026 AM10:02

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NOELLE BUONINCONTRI,
Plaintiff,

v. Case No. 6:26-cv-00715-AGM-CAB

HUMBERTO A. LIRIANO, and
HORIZON WEST PEDIATRICS CENTER, PLLC,
n/k/a HORIZON WEST MEDICAL GROUP, PLLC,
Defendants.
_______________________________________/

**Response of Defendant Humberto A Liriano Opposing the Supplemental Motion for Attorney Fees and Costs**

Defendant Humberto A. Liriano, appearing solely on his own behalf, opposes the amount requested in Plaintiff's Supplemental Motion filed October 9, 2026 (Doc. 57). He does not dispute Plaintiff's established entitlement to reasonable fees and costs for Count I within the period fixed by the Judgment. He requests exclusion of distinct non-Count I work and clerical charges, reasonable allocation of mixed entries, correction of the admitted billing-rate error, and a reduction of Ballentine's hourly rate to $300 or another rate the Court finds reasonable.

The attached entry-by-entry schedule addresses all 123 fee entries in Invoice 24087. Using a proposed $300 hourly rate for Ballentine and Plaintiff's requested rates for other timekeepers solely as a conservative calculation, the schedule proposes fees of $6,520.00 plus $494.23 in costs, totaling $7,014.23. Mixed-entry allocations are estimates proposed for the Court's review, not assertions that the

underlying records identify exact claim-specific minutes. If the Court adopts different allocations or rates, Defendant requests an explained calculation confined to compensable Count I work.

## I Scope of the existing fee entitlement

The August 12, 2026 Judgment expressly authorizes reasonable fees and costs "in relation to Count I only" through the date of the Offer of Judgment. Doc. 47 at 1 ¶ 3, 2. Plaintiff identifies that offer date as May 30, 2026. Doc. 57 at 2. Plaintiff requests $13,236.00 in fees for 35.80 hours and $494.23 in expenses. Id. at 7–8. Defendant relies on the existing Judgment and does not seek to reopen the wage judgment or litigate any other claim through this response.

The attached invoice dates the listed work from February 13 through May 29, 2026. Defendant does not claim that all pre-complaint work is excluded merely because the Complaint was filed April 1. Necessary preparation for Count I may be compensable. The relevant objections concern the purpose and necessity of each task. Nor does Defendant request an automatic reduction to one-fourth merely because the amended action contains four counts.

## II Governing standards and the billing record

The lodestar uses reasonable hours multiplied by reasonable rates. Inadequately documented, excessive, redundant, or unnecessary time may be excluded; billing

records should permit identification of distinct claims. Hensley v. Eckerhart, 461 U.S. 424, 433–35, 437 & n.12 (1983). Common factual work may serve several claims, but a shared employment relationship does not itself establish that every distinct legal task was necessary for Count I.

Local Rule 7.01(c)(4) requires the timekeepers' qualifications, tasks, hours, requested rates, market support, and lead counsel's verification of billing judgment. Rule 7.01(d) requires objections identifying the day and timekeeper. Defendant supplies that specificity in Attachment A. The schedule assigns one monetary reduction per entry; additional reasons explain that reduction and are not separate deductions.

**III Distinct state claim work is identifiable**

The motion asserts that the claims are inseparable because they share a common core of facts. Doc. 57 at 5–6; Doc. 57-1 ¶ 11; Doc. 57-2 ¶¶ 19–22. However, the actual descriptions isolate particular state-law work: February 24, Cooper, 0.50 hour, drafting and researching a worthless-check demand under section 68.065; February 24, Ballentine, 0.40 hour, reviewing that demand; and May 7, Ballentine, 1.30 hours, analyzing worthless-check defenses and the timing of the check versus garnishment. Doc. 57-1 at 6, 8. Attachment A rows 3, 4, and 55 remove these tasks at corrected requested rates.

The notice-mailing affidavits on March 20, billed by Cooper and Kern, follow the pre-suit demand and precede the Complaint. Their descriptions identify service of a notice rather than service of the federal complaint. The default motion identifies the February 25 pre-suit notice as a section 68.065 demand and relies on it to establish the worthless-check claim. Doc. 17 at 5 ¶ 15, 16. That context supports the objection, although the actual mailing affidavit is needed to confirm its precise subject. Rows 10–12 therefore request exclusion absent proof of a distinct Count I purpose. The separate February 13 adversary-proceeding entry likewise needs a demonstrated nexus to Count I; its date alone is not the objection.

Plaintiff's own cited authority permits shared factual work while excluding discrete research on a non-fee claim. Durden v. Citicorp Trust Bank, FSB, 763 F. Supp. 2d 1299, 1306–07 (M.D. Fla. 2011). Durden also found an intertwined-claims fee request overinclusive and reduced it. Id. at 1309–10. Thus, Durden supports task-specific review rather than blanket recovery for everything associated with the employment dispute. Defendant's objection follows that distinction.

## IV Mixed entries require an explained allocation

Cooper's March 16 entry expressly combines FLSA, fraud, and worthless-check drafting and research. Later complaint revisions and default-judgment/declaration

entries contain no allocation of independent legal theories or damages. Rows 5, 7, 8, and 103–110 identify these entries. Defendant retains substantial time for common factual development and Count I, while proposing exclusion of estimated portions devoted to separate theories and relief. Those estimates are neither contemporaneous measurements nor a ratio of successful counts.

The filed default-judgment motion confirms distinct legal work. It sought judgment on all three original counts, expressly addressing Count I at pages 8–11, fraudulent inducement at pages 12–15, and the worthless-check statute at pages 15–17. Doc. 17 at 1, 8–17. Its fraud section separately analyzed misrepresentation, officer tort liability, lost wages through reemployment, W-2 tax consequences, and investment-withdrawal tax consequences. Its check section separately addressed statutory notice, defenses, and enhanced damages. These identified legal issues are not converted into minimum-wage issues solely because they involve the same employment relationship. Common facts, jurisdiction, default procedure, and necessary Count I proof remain compensable. Rows 103–110 propose a half allocation because the time entries do not segregate this work; this is a provisional estimate of time, not a ratio of pages or counts. The supporting declaration and any contemporaneous task allocation should inform the final assessment.

The Amended Complaint further distinguishes bankruptcy-related services from the fee entitlement on Count I. In Count II (Fraud against Liriano), Plaintiff

expressly pleads "attorney's fees and costs incurred in the undersigned's representation of Plaintiff in Horizon West's bankruptcy case" as an element of alleged fraud damages. Doc. 33 ¶ 58 (at 10); see also id. ¶ 59 and Count II prayer for relief (at 10–11). That pleading identifies a separate asserted purpose for bankruptcy representation, rather than establishing that the services were reasonably necessary for the FLSA minimum-wage claim. The Court's later Judgment limits this fee award to reasonable services in relation to Count I through the Offer of Judgment. Doc. 47 at 1–2. Defendant does not ask the Court to decide the merits of Count II or automatically exclude work serving both claims; he requests a specific explanation of any asserted Count I benefit and avoidance of duplicative recovery for services claimed elsewhere as fraud damages. Horizon West's Chapter 11 reorganization and continued operations, standing alone, neither prove fraudulent intent when the employment agreement was made nor demonstrate that bankruptcy-specific representation is chargeable to Count I. This clarification supports, but does not change, the allocations and calculations in Attachment A.

Bankruptcy records require a task-specific analysis. The default motion cited a bankruptcy filing to support Defendant's operational control and FLSA employer status, Doc. 17 at 9, while its fraud section used bankruptcy schedules to address alleged knowledge of financial inability, id. at 12–13. Accordingly, Defendant

does not request exclusion of every bankruptcy reference. Rows 1 and 47 concern separately described adversary-proceeding or bankruptcy-dismissal strategy without an identified Count I purpose. The financial-record allocations address mixed or collectability tasks, subject to any demonstrated Count I use. Mere use of a bankruptcy record in the default motion does not establish that all bankruptcy litigation or strategy time was necessary to that claim.

The May 19 summary-judgment drafting and affidavit work is followed by default-judgment work on May 23–26. Rows 94–95 propose partial reductions pending an explanation of what Count I work was reused and whether distinct state-law or redundant drafting is included. Defendant does not contend that unfiled work is inherently noncompensable or that attorney supervision of a law clerk is automatically duplication.

The schedule retains ordinary settlement discussions. It proposes partial allocations only where descriptions specifically identify financial schedules, recoverable assets, or bank-statement collection without a demonstrated Count I share (rows 44, 54, 57, and 60). The Court may retain a greater amount if Plaintiff substantiates its necessity for Count I settlement. Rows 88 and 97 are requested for complete exclusion because they combine potential medical-board escalation and potential criminal issues, respectively, with other subjects without identifying the portion, if any, reasonably necessary to Count I. Defendant states that no criminal charges

were brought and that he is unaware of any medical-board complaint arising from this dispute. Although attorney-client communications concerning Count I may be compensable, Plaintiff has not adequately segregated Count I time within these entries. These are objections to identified tasks, not to confidential settlement amounts.

**V Clerical tasks and overlapping review should be excluded**

Electronic filing, administrative service-status tracking, routine form completion, and delivery of a document for signature are identified in Attachment A. The invoice includes 0.50 hour for electronically filing the initial papers and further electronic filing entries for the funding certification and return of service. Doc. 57-1 at 7–8. The Court should exclude ministerial work or require identification of the substantive legal task, rather than awarding law-clerk rates for overhead.

The Court should also evaluate supporting receipt/calendar or review entries where counsel billed substantive review of the same order or service document. Examples include the funding order on April 6, return of service on April 21, default entries on May 13, and denial order on May 18. The schedule retains attorney review and removes supporting entries absent a distinct contribution. It retains short substantive conferences and Rule 55 research. Caplan v. All American Auto Collision, Inc., 36 F.4th 1083, 1089–92 (11th Cir. 2022), confirms that clerical and

excessive docket-review time warrants scrutiny; it does not require exclusion of every short review entry.

**VI Requested hourly-rate reduction and the supporting declaration**

The motion admits that one 0.40-hour entry inadvertently used $500 instead of Ballentine's prevailing $425 rate in this matter. Doc. 57 at 4, 7. That error adds $30.00. All 23.20 Ballentine hours should therefore initially be valued at $425, producing $9,860.00, before task-specific reductions. Attachment A first normalizes every Ballentine entry to $425 and deducts the $30 once at the aggregate level; it does not assume which entry carried the mistaken rate. This arithmetic correction does not establish that $425 is a reasonable market rate. Gennifer Bridges supplies an opinion supporting the request, not a court determination. Her declaration states that she reviewed every entry and considers all recoverable, yet it does not separately explain the identified worthless-check demand/defense tasks or the mixed collateral topics. Doc. 57-2 ¶¶ 15, 19–22. Her rate table endorses $500 for Ballentine although the motion acknowledges an inadvertent increase. Id. ¶ 18; Doc. 57 at 4. The Court should weigh the opinion against the underlying descriptions and admitted correction.

The declaration lists job titles and rates for the non-attorney timekeepers without individualized experience or qualification information supporting each rate. Doc.

57-2 ¶ 18; see also Doc. 57-1 ¶ 5. Defendant specifically disputes the adequacy of support for the $275 Cooper, $225 Kim, $210 Kern/Madden, and $175 Mills rates for the work at issue. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299–1301, 1303 (11th Cir. 1988), requires market support and detailed proof; the Court may assess reasonable rates using its expertise. Defendant's calculation uses the requested non-attorney rates without conceding their reasonableness. Cooper's $275 and Kim's $225 law-clerk rates require evidence of their individual qualifications and comparable local rates for substantive law-clerk work. Kern's and Madden's $210 paralegal rates and Mills's $175 legal-assistant rate require the same individualized scrutiny. A job title alone does not establish that every task is legal work or that the requested rate is justified. Clerical work remains excluded regardless of the timekeeper's title. Defendant requests a reduction to rates supported by the record and the Court's expertise; the calculation below does not assume an unsupported numerical rate for these different positions. Any further rate reduction should apply only to retained compensable hours. Defendant separately proposes $300 per hour for Ballentine's retained substantive work. Ballentine identifies approximately ten years of commercial-litigation and business-dispute practice, but the declarations do not provide detailed comparable Orlando FLSA rate evidence explaining why this Count I work requires $425 per hour. Doc. 57-1 ¶¶ 2, 4–5; Doc. 57-2 ¶¶ 17–18. Bridges's own $615 rate and

general endorsement of a $500 Ballentine rate do not, standing alone, resolve the appropriate comparison for the work billed here. Defendant requests that the Court assess similar services, comparable experience, and the relevant local market, rather than accept the firm's asserted charge as controlling. Norman, 836 F.2d at 1299–1301.

The $300 figure is Defendant's proposed rate for the Court's consideration, not a representation that a witness has established it as the prevailing Orlando rate. Defendant does not contend that a defense lawyer's rate in another case automatically caps Plaintiff's rate. The Court may use its own expertise and the parties' sufficiently detailed evidence to determine a reasonable rate. Norman, 836 F.2d at 1303. If the Court concludes that a rate above or below $300 is supported, it should apply that rate to the retained compensable hours. Defendant preserves the task-specific objections regardless of the rate selected.

**VII Calculation and costs**

The calculation is $13,236.00 less the $30.00 rate correction, less $4,554.75 in nonoverlapping task reductions at corrected requested rates, and less $2,131.25 from reducing the retained 17.05 Ballentine hours from $425 to $300, leaving $6,520.00 in fees. If the Court accepts $425 for Ballentine and the requested non-attorney rates, the same hours schedule yields an alternative of $8,651.25 in fees;

that figure is not Defendant's primary requested award. Attachment A shows the retained hours, reduction, date, timekeeper, description, and reason for each entry. Defendant requests those reductions or such other supported task allocations and rates as the Court determines reasonable. He does not request an additional percentage cut on top of the schedule for the same deficiencies.

Defendant makes no reduction request for the documented $494.23 in costs. The supporting invoices show a $405 filing fee, $85 service charge, $3.18 in postage, and $1.05 in copying. Doc. 57-1 at 16, 18. The motion groups the last $4.23 as postage, but that labeling discrepancy alone does not warrant a reduction. These costs are kept separate from the attorney-fee calculation.

**VIII Relief requested**

Defendant respectfully requests that the Court grant Doc. 57 only in part; correct the admitted rate error; reduce Ballentine's rate to $300 or another supported rate and reduce any unsupported non-attorney rates; exclude the distinct non-Count I and clerical work identified above; make supported allocations for disputed mixed entries; and award $6,520.00 in fees plus $494.23 in costs, totaling $7,014.23, or another reasonable amount supported by specific findings. Defendant requests no relief on behalf of the company and no alteration of the existing Count I wage judgment.

Dated: October 19, 2026

**Certificate of Service**

I certify that on October 19, 2026, I served a true and correct copy of this Response and Attachment A by depositing them in the United States mail, postage prepaid, addressed to Andrew S. Ballentine, Esq., Nardella & Nardella, PLLC, 135 W. Central Blvd., Suite 300, Orlando, FL 32801. I intend to hand-deliver the filing to the Clerk; hand-delivery to the Clerk is separate from service on opposing counsel.

**PERSONAL REVIEW AND VERIFICATION**

I, Humberto A. Liriano, appearing pro se, certify that I have personally reviewed this Response in Opposition to Plaintiff's Supplemental Motion for Attorney's Fees and Costs, together with Attachment A containing the line-by-line billing objections. I have reviewed the factual statements, billing entries, proposed calculations, and arguments presented in these documents. I confirm that the objections reflect my position and that the factual representations are accurate to the best of my knowledge, information, and belief after reasonable inquiry. I understand that I am personally responsible for the contents of these filings, including any legal authorities cited.

Date: October 19, 2026 Signature: ______________________

Humberto A. Liriano, Defendant, Pro Se | Telephone: 407-455-3165 | Email: haliriano@yahoo.com

**Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: ChatGPT assisted with reviewing the filed motion, declarations, and billing records, researching authorities, calculating proposed reductions, and drafting and formatting this response and its billing attachment. However, under

penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

Signature: ______________________
Humberto A. Liriano
Dated: October 19, 2026

Signature for Response: ______________________

Humberto A. Liriano, Defendant, Pro Se | 407-455-3165 | haliriano@yahoo.com